STATE *EX REL.* HARLEY v. LANCASTER, SHERIFF.

1. REMEDY.—MANDAMUS is the proper remedy to compel the performance of some specific duty imposed by law of a ministerial character, in which the relator has a legal interest.

2. 19 STAT., sec. 2, p. 863, construed.

3. SHERIFF—SALE—DEED—TAX EXECUTION.—When a sheriff sells lands under a tax execution, it is his plain duty to execute to the purchaser a deed therefor, upon tender of the amount of his bid. When deed cannot be executed on day of sale on account of absence of sheriff, he must execute deed upon tender of amount by bidder, if in a few days after.

4. TENDER—SALE—DELINQUENT LANDS—MORTGAGEE.—The tender by mortgagee of taxes and costs on delinquent lands comes too late after sale by sheriff under tax executions.

5. AGENT—SHERIFF—DELINQUENT SALES.—A delinquent taxpayer may authorize another in writing to receipt to the sheriff for balance of bid for lands sold at delinquent land sale, after payment of taxes and costs, and the sheriff must accept such receipt.

6. CASE DISTINGUISHED.—*Snelling* v. *Sheriff*, 32 S. C., 348.

7. DISSENTING OPINION of MR. JUSTICE GARY.

Before WATTS, J., Barnwell, August 23, 1895. Reversed.

The following is the petition and answer upon which this proceeding commenced:

Your petitioner, the relator, respectfully shows to your honor:

1. That one H. M. Duncan having made default in the payment of taxes duly assessed and levied against her, execution was issued against her property, and a certain tract of land, to wit: "540 acres, more or less, and bounded by lands of Dicks, Patterson, Bates and Mrs. Baker," was levied upon, as required by law, by J. W. Lancaster, Esq., as sheriff of Barnwell County. Thereupon the said land was duly advertised for sale on salesday in August, 1895, to satisfy the said execution to enforce the collection of taxes as aforesaid, as the property of the said H. M. Duncan.

2. That on said salesday, the said sheriff being absent from the court house on other official business, his acting deputy, John B. McNab, who has been the clerk in his office and his recognized deputy for several years, sold said lands, by virtue of said execution, levy and advertisement, for and on behalf and by direction of the said sheriff. At said sale the said lands were knocked down to your petitioner at and for the sum of $1,900, he being at that price the last and highest bidder.

3. That the said clerk and acting deputy thereupon entered upon the said sheriff's salesbook the name of your petitioner as purchaser, naming the land by the foregoing description, and specifying the amount of the bid, as by the custom followed in such cases.

4. That on account of the before mentioned absence of the sheriff, which continued until the following day, the deed could not be delivered upon salesday, and your petitioner, who resides several miles from the court house, left, to return at a later date to pay the purchase money and receive his deed.

5. About the hour of seven o'clock in the evening of

salesday, and about two hours after the legal hours for sales had expired, S. G. Mayfield, Esq., handed to the said deputy the amount of the taxes, expenses and costs, the same to be applied should the purchaser, your relator, fail to comply with his bid upon the return of the sheriff. The said amount was so accepted upon said conditions by the said deputy, and now remains in his hands. Mr. Mayfield's assigned reason for making said deposit was that he was representing, as attorney, a mortgage covering this and other lands of the defaulting taxpayer.

6. Having been notified of the return of the sheriff, your petitioner called on the sheriff for the purpose of settling for his bid on the 9th inst., when he was informed that the legal advisers of the officer were absent, and a postponement of the settlement was requested until their advice could be asked and obtained.

7. On the next day, the 10th inst., all parties being present, your petitioner tendered to the sheriff in his office, during office hours, the following: (a) $35.60 in cash, good and lawful money of the United States, $32.35, being the amount due on the said tax execution for all purposes, and $3.25 in full of fee for the title deed and probate of the same, said sum being based upon the calculation made then and there by said sheriff. (b) An order upon the said sheriff to pay over to your petitioner, R. H. Harley, the balance of the bid; that is, $1,867.65, after deducting the amount due on account of said tax execution. This order being signed by the defaulting taxpayer, the said H. M. Duncan, and giving to your petitioner, R. H. Harley, the right to receipt for said balance. (c) A receipt in full against said sheriff for the said sum of $1,867.65 on account of the claim of the said H. M. Duncan, defaulting taxpayer, for the said balance, said receipt being signed by your petitioner, by virtue of the said order of the said H. M. Duncan, last aforesaid.

8. That at the time of tendering the said money, order, and receipt, your petitioner demanded from the sheriff his deed to the said property, duly executed, but the sheriff re-

fused to execute and deliver the said deed, but did, then and there, refuse to accept said tender, and did return to this petitioner said money, order, and receipt.

9. That your petitioner does not know the reasons which actuated the said sheriff in his conduct herein.

Wherefore, your petitioner prays that the said J. W. Lancaster, sheriff as aforesaid, be required to show cause before your honor, at chambers at Barnwell Court House, why he should not be ordered to accept the tender herein set forth, and execute to your petitioner a deed to the premises herein described.

The return of J. W. Lancaster, sheriff of said county, to the rule issued herein, respectfully showeth:

1. Admits substantially the allegations contained in the 1, 2, 3, 7 and 8 paragraphs of the petition herein; admits allegations 5 and 6, on information and belief.

2. Your respondent further shows as a reason for his refusal to execute said deed when demanded by the relator herein, as follows: That the said described land was struck off at the tax sale to the said R. H. Harley for the said sum of $1,900, he being at that price the last and highest bidder for the same.

3. That as soon as the tax sales were over, the said John B. McNab, acting deputy, immediately repaired to the office of the sheriff, and awaited and expected that said R. H. Harley would comply with his bid at said tax sale. That the said John B. McNab remained in the office of the sheriff during the entire day, and that the said R. H. Harley failed to make his appearance or offer to comply with his bid. That tax sales are strictly for cash, and when the said R. H. Harley failed during the day on which said property was sold to comply with his bid or offer to do so, then your respondent regarded his right to comply afterwards forfeited.

4. That at or near the hour of .7 o'clock on the day said property was sold, and after the legal hours thereof had ex-

pired, S. G. Mayfield, Esq., appeared at the office of the said sheriff, and requested to know if R. H. Harley had complied with his bid at the said tax sale of the land described in the first paragraph of the petition herein. Upon being notified that the said R. H. Harley had not complied with his bid, the said S. G. Mayfield informed the said deputy that he represented a bank in Charleston, S. C., who held a mortgage over said land, and then and there offered to pay the taxes on said lands, which was accepted by the said deputy, upon advice of. the sheriff's counsel; that immediately the amount of the taxes, penalties and costs were paid by said S. G. Mayfield, and the official receipt was detached from the tax execution, and turned over to the said S. G. Mayfield, Esq.

5. Your respondent further says he was informed there was a verbal agreement or understanding between the said S. G. Mayfield and the said John McNab to the effect that if the said R. H. Harley came in afterwards and complied with his bid at said sale, that the money paid by S. G. Mayfield for taxes would be returned; but your respondent further alleges that such a contract in law was null and void, for when the taxes were paid and the receipts surrendered, then the power of your respondent as sheriff to execute a tax title to said property ceased to exist; and besides, a verbal agreement as to the sale of real estate can have no binding force or effect.

6. Your respondent further shows, under the statute of this State regulating the enforcement and collection of taxes, that a mortgagee has the right to pay the taxes and incorporate the amount paid as a part of the mortgage debt; and when that right was exercised, as in this case, the sheriff's power and authority over the entire matter was at an end.

Your respondent further submits, that he has acted strictly in accordance with what he perceived to be the law of the case and his duty in the premises, and that your respondent will cheerfully conform to the order and mandate of this court.

Wherefore, your respondent prays that the rule herein be discharged, and that the prayer of the petition herein be denied.

After hearing argument, Judge Watts made the following order: On hearing read the return of the sheriff to the order to show cause, made by me in the above entitled proceeding, by which it appears that there is a dispute as to the right of the sheriff to make the deed as prayed for in the petition, under the authority of the case of *The State ex rel. Snelling* v. *Turner*, sheriff, 32 S. C., 348, it is ordered, that the petition be refused, without prejudice to the right of the relator to establish his right to said deed, in the manner indicated in the opinion of the court in the above mentioned case of *The State* v. *Turner*, and the rule to show cause be, and the same is hereby, discharged.

From this order the relator appeals.

*Messrs. Bellinger, Duncan & O'Bannon*, for appellant.

*Messrs. Patterson & Holman*, contra.

March 21, 1896. The opinion of the court was delivered by

MR. JUSTICE POPE. R. H. Harley, having by petition applied to his honor, Judge Watts, at Barnwell, in the Court of Common Pleas, for a writ of mandamus to compel J. W. Lancaster, as sheriff, to execute to him a deed for a certain tract of land, situate in said county and State, containing 540 acres, which he, Harley, claimed he had purchased at sheriff's sale, and the defendant having answered said rule, Judge Watts issued an order, dated 23d day of August, 1895, denying such writ. From this order the appellant has appealed. The petition, the answer, and the judge's order will be reported. The grounds of appeal are as follows:

1. That his honor, the presiding judge, erred in concluding as matter of law that the mere fact that there was a

dispute as to the right of the sheriff to make the deed prayed for in the petition, was sufficient to prevent the issue of a writ of mandamus to compel the sheriff to execute a deed of conveyance to the relator as purchaser at the tax sale mentioned in the petition.

2. That his honor, the presiding judge, erred in not directing a writ of mandamus to issue, to compel the sheriff to execute the deed of conveyance to the relator as purchaser of the lands mentioned in the petition, because the return of the sheriff fails to state facts sufficient to show cause why he refused to execute said deed.

(a) In that the relator, as purchaser at the tax sale, acquired an inchoate title in the land purchased, by virtue of his bid and its acceptance by the sheriff, which was not forfeited by his failure to comply with his bid on the day of sale. (b) In that payment of the taxes for which the land was sold by a mortgagee after the sale to a purchaser, whose bid has been accepted and the entry of the sale made on the sheriff's sale book in the name of the purchaser, can have no effect whatever upon said sale. (c) In that the tender made by the relator to the respondent, on the 10th day of August, 1895, of (1) $35.61 in cash, good and lawful money of the United States, $32.35 being the amount due on the said tax execution for all purposes, and $3.25 in full of fee for the title deed and probate of the same, said sums being based upon the calculations made then and there by said sheriff; (2) an order upon the said sheriff to pay over to your petitioner, R. H. Harley, the balance of the bid, that is, $1,867.65, after deducting the amount due on account of said tax execution. This order being signed by the defaulting taxpayer, the said H. M. Duncan, and giving to said R. H. Harley the right to receipt for said balance; and (3) a receipt in full against the said sheriff for the said sum of $1,867.65, on account of the claim of the said H. M. Duncan, defaulting taxpayer, for the said balance, said receipt being signed by your petitioner, by virtue of the said order of the said H. M. Duncan, last aforesaid, was a full

and complete compliance with the terms of the relator's bid at said sale, the defaulting taxpayer having the right to assign the surplus proceeds of sale, after payment of the amount due on account of said tax execution to the relator, to authorize him to receipt to the sheriff therefor. (d) In that it was not necessary for the relator to show the effect of deed, or that it would avail the party seeking it.

We have required the petition and return to be printed in the report of the case, because the facts underlying the contention are there made manifest. Judge Watts refused the writ, relying upon the case of *The State ex rel. Snelling* v. *Turner, sheriff,* 32 S. C., 348, as authority therefor, because he thought there was a dispute as to the right of the sheriff to make the deed, as prayed for in the petition. It is very clear that mandamus will lie to compel the performance of some specific duty imposed by law of a ministerial character, and in which the relator has a legal interest. *State ex rel. Gibbs* v. *Morrison, as sheriff,* 22 S. E. R., 605; *Morton, Bliss* v. *Comp. Genl.,* 4 S. C., 430. In the case at bar, the law of the State devolved the duty upon the sheriff to sell the land in question to pay the taxes due by the owner of the land, and to make title to the purchaser at the sale made by him, upon a compliance by such purchaser with his bid; and thereafter, upon the full satisfaction of such taxes, and the costs and fees incident to the sale, to pay any surplus of the proceeds to the delinquent taxpayer, 19 Stat. at Large, 863, section 2. The sheriff made the sale, and entered the purchaser's name as the purchaser in his book of sales. The sheriff could not make the deed on day of sale, but when the purchaser offered to comply, a day or two after the sale, the sheriff refused to make title to the land, alleging that after he had made the sale, and after the hour for official sales had been passed, that the attorney of some bank in Charleston claimed to hold a mortgage on the land sold, came to him and paid the taxes. The statute must be the sheriff's guide; he must

obey its mandales; having sold the land·to the relator, as the highest bidder, and entered his name on his books as the purchaser, the purchaser (the relator here) acquired rights and assumed liabilities respecting his purchase of these lands. .When such bidder offered to pay the money called for by his bid, it was the plain duty of the sheriff to make the deed called for by the statute. It was but a ministerial act. It can make no difference, that one claiming to be the holder of the mortgage paid to the sheriff the delinquent taxes, for such an act occurred after the relator had purchased, after his rights had· become fixed, so to speak. Nor can it make any difference, that the delinquent taxpayer did not appear in person to receive the balance of the proceeds of sale after the taxes and charges had been paid. Such delinquent taxpayer had a perfect right to depute the relator to receive for him and to receipt to the sheriff for such surplus.

We do not undertake to pass upon any question connected with any holder of an alleged mortgage. We confine our decision to the question, and the parties before us. To our minds, it is clear that the Circuit Judge was in error. The decision of this court, referred to as authority, *State ex rel. Snelling* v. *Sheriff, supra*, is clearly distinguishable from this case; for in the former there was a clear, legal remedy possessed by Snelling against the sheriff, while here there is not.

It is the judgment of this court, that the order of the Circuit Judge be reversed, and that this proceeding be remanded to that court, that the writ of mandamus shall issue.

MR. JUSTICE GARY, *dissenting.* Section 349 of the Revised Statutes, is as follows:

"Under and by virtue of said warrant and execution, the sheriff shall seize and take exclusive possession of so much of the defaulting taxpayer's estate, real or personal, or both, as may be necessary to raise the sum of

money named therein and said charges thereon, and, after due advertisement, sell the same before the court house door of the county, on a regular salesday and within the usual hours for public sales, for cash, make title therefor to the purchaser complying with terms of sale, and annex to said title the duplicate warrant thereon of his action thereunder, put the purchaser in possession of the property sold and conveyed, and, after deducting from the proceeds of sale the amount of taxes and charges, shall pay over the ·excess, if any there be, to the defaulting taxpayer, and the taxes so collected to the county treasurer."

The taxes due upon the land amounted to $32.35. To satisfy this amount due for taxes, the sheriff sold 540 acres of land, which was bid off at the price of $1,900. There are two requirements of the section just quoted to which we desire to call special attention: First, the sheriff was only allowed to sell *so much* of the property as was necessary to raise the sum of money named in the execution, and the charges thereon. Second, the sheriff was required to sell for *cash*. If he had observed either of these requirements, this controversy would not have arisen. It seems to me that, to give to the words "defaulting taxpayer" so strict and technical a construction as to preclude the consideration of the mortgagee's rights, would also force a strict and technical construction of the word "cash." There can be no doubt that, if the purchaser had paid the "cash" to the sheriff, the mortgagee would have had the right to an adjudication of his claim to the surplus proceeds of sale, provided he instituted his proceedings before the sheriff paid the money to the defaulting taxpayer. Furthermore, if the mortgage was recorded, it might be that the sheriff would ·be held liable, if, after such notice, he paid the money to the "defaulting taxpayer." ·I cannot believe that the statute intended a mortgagor should receive the surplus proceeds of sale in preference to his mortgagee. In such a case as this the rights of the mortgagee are transferred to the surplus proceeds of sale, just as in other

sales under execution where there are subsequent mort-
gages.

I am, therefore, of opinion that the petitioner is not enti-
tled to the writ of mandamus: 1st, because the sheriff clearly
violated the statute, in selling *all* the land to satisfy taxes
amounting to only $32.35; and, 2d, because the sheriff has
not received the "cash" from the purchaser.

I, therefore, dissent from the opinion announced by the
majority of the court.