### DE WITT C. CUNNINGHAM v. EMILE PORCHET ET AL.

#### Decided March 22, 1900.

**1. Liquor Dealer's Bond—Breach of Conditions.**

The keeping of a saloon with a dance hall attached, where lewd women resort, and where there is music, dancing, singing, and shouting at almost all hours of the night, constitutes a breach of the statutory liquor dealer's bond, conditioned that the dealer will keep a quiet and orderly house, which the statute defines as one in which no music, loud or boisterous talking, or indecent or vulgar language is allowed, or any other noise calculated to annoy persons residing or doing business in the vicinity. 2 Sayles' Rev. Stats., art. 5060g.

**2. Same—"Aggrieved Person."**

A person residing in the near vicinity of such saloon and dance hall, and who is disturbed and annoyed by the music, dancing, noise, and presence of lewd women there, and whose boarders have left him on account thereof, is entitled to sue on the bond for the penalty as a "person aggrieved" within the meaning of the statute.

**3. Same—Place of Business.**

Cutting off the bar of the saloon from the dance hall by a partition not reaching to the ceiling did not prevent the hall from being a part of the premises constituting the dealer's place of business, the liquors being served and drunk in the dance hall, as well as at the bar.

**4. Same—City License to Give Balls No Defense.**

A permit granted by the city authorities to a retail liquor dealer to give balls on the premises can not license acts prohibited by the statute and the conditions of his bond.

**5. Same—Plaintiff's Consent or Contributory Fault.**

Evidence that plaintiff rented some houses on the rear of his lot to objectionable characters afforded no defense for his action for the penalty on the bond, as this did not show consent or contributory fault on his part.

APPEAL from the County Court of Galveston. Tried below before Hon. MORGAN M. MANN.

*Austin & Rose* and *John Grothgar,* for appellant.

*Marsene Johnson,* for appellees.

GARRETT, CHIEF JUSTICE.—This was an action to recover the penalty for a breach of the conditions of a liquor dealer's bond. On July On July 6, 1898, Emile Porchet, one of the appellees, procured a license for the sale of malt liquors in quantities less than a quart in Galveston County, and executed a bond therefor as required by law, with the other appellees, C. Nicolini and T. Grandoni, as sureties. The action was brought by the appellant for a breach of the bond during the month of July, 1898, subsequent to the execution thereof. Porchet conducted the business under the license from July 6, 1898, to August 1, 1898, at 2719 Market Street, in the city of Galveston. Appellant lived next door, and only a few feet from Porchet's place of business on the adjoining lot. He owned the lot upon which he resided, and had thereon a two-story house with windows opening on the side next to Porchet's saloon. He had lived on the premises for a number of years, and occupied them with his wife as a home. At the time of the acts complained of, appellant was 60 years of age and infirm in health. His wife kept boarders for a living.

The ground floor of the building occupied by Porchet was used by him as a saloon and dance hall. The bar was cut off in front by a partition seven or eight feet high, not reaching up to the ceiling. Drinks of liquor were served both at the bar and at tables in the dance hall. There was a piano in the dance hall, and every night men and lewd women and prostitutes gathered there and engaged in dancing and drinking, using loud, vulgar, indecent, and boisterous language. There was piano music in the dance hall every night, and sometimes there would be violin and other instrumental music and singing also. This occurred nearly every night, and continued until a very late hour, and sometimes throughout the night. The music and dancing was confined to the back room, and the women were served with beer there. The proprietor frequently during the week gave public balls for which he had a permit from the city authorities, and paid therefor a fee, and a police officer was detailed to preserve order. Under this permit the balls were allowed to be kept up until 3 o'clock in the morning. Appellant was greatly disturbed and annoyed by the noises of the music and dancing and the loud and indecent language of the men and women, and suffered loss of sleep by reason thereof, and on account thereof his boarders left him.

The conditions of the bond required by law of persons about to engage in the sale of liquors, or bitters capable of producing intoxication, to be drunk on the premises and of the one executed by the appellees and sued on in this case, are: (1) the dealer shall keep an open, quiet, and orderly house or place for the sale of such liquors or bitters; (2) he

will not sell nor permit to be sold in his house or place of business, nor give nor permit to be given any such liquors or bitters (a) to any person under the age of twenty-one years, or (b) to a student of any institution of learning, or (c) to any habitual drunkard, or (d) to any person after having been notified in writing, through the sheriff or other peace officer, by the wife, daughter, or sister of the person, not to sell to such persons; (3) he will not permit any person under the age of twenty-one years to enter and remain in such house or place of business; (4) he will not permit any games prohibited by the laws of this State to be played, dealt, or exhibited in or about such house or place of business, and will not rent for such purpose to any person any part of the house or place in which he has undertaken to sell such liquors or bitters; and (5) he will not adulterate the liquors by mixing with any drug, or knowingly sell or give away any impure or adulterated liquors of any kind.

A quiet house or place of business, within the meaning of the condition that the dealer shall keep a quiet house, "is one in which no music, loud or boisterous talking, yelling, or indecent or vulgar language is allowed, used, or practiced, or any other noise calculated to disturb or annoy any persons residing or doing business in the vicinity of such house or place of business, or those passing along the streets or public highways. By an orderly house is meant one in which no prostitute or lewd woman or women are allowed to enter or remain." 2 Sayles' Rev. Stats., art. 5060g.

The condition of Porchet's bond, that he would keep a quiet and orderly house, was shown to have been breached. The use of music alone was a breach of the bond. State v. Curtis, 8 Texas Civ. App., 506. The music need not be such as is calculated to disturb or annoy persons residing or doing business in the vicinity, or those passing along the street or highway. Music is inhibited because, when used in such a place, it is likely to draw crowds and cause drinking and boisterous conduct. But it is also shown that loud and boisterous talking, yelling, and indecent and vulgar language were allowed on the premises, and were of nightly occurrence, being kept up nearly every night until a late hour, and sometimes almost all night. There were also other noises, such as the noise of horns and other musical instruments, dancing, singing, and the shuffling of feet, all calculated to disturb and annoy persons residing in the neighborhood. The mere presence of prostitutes and lewd women made the premises a disorderly house. These women were also engaged in the noises and vile language inhibited by the law. Without doubt a suit could be maintained on the bond in the name of the State for the recovery of the penalty for a breach of its conditions.

But it is claimed that the appellant was not "aggrieved" by the violations of the conditions of the bond in this case, and therefore can not recover. The law provides that the "bond may be sued on at the instance of any person or persons aggrieved by the violation of its provisions." There has been some tendency to define the word "ag-

grieved" in its common acceptation, instead of its legal sense. Edgett v. Finn, 36 S. W. Rep., 830. "Aggrieved," in its legal sense, means "having suffered loss or injury; damnified; injured." Black's Law Dict., in verbo "Aggrieved." Its legal sense is the one in which it is used in the statute. Peavy v. Goss, 90 Texas, 89; Qualls v. Sayles, 18 Texas Civ. App., 400; Veon v. Creaton, 138 Pa. St., 48; 2 Enc. of Pl. and Prac., 167.

The statute with reasonable certainty confers a right of action upon certain persons who are deemed "aggrieved" within the meaning thereof. A mother is an "aggrieved" person when liquor has been sold to her minor son. Peavy v. Goss, supra. So a father. Qualls v. Sayles, supra. A college may maintain a suit when liquor has been sold to one of its students. Daniels v. College, 20 Texas Civ. App., 562. It is not necessary for the person to prove that he is actually aggrieved. The word simply relates to the classes of persons entitled to sue. Tipton v. Thompson, 21 Texas Civ. App., 143. Does the appellant come within any one of the classes of "aggrieved" persons named in the statute, or is he a person who, upon legal principles, will be deemed "aggrieved?" If he had been injured by the sale to him of adulterated liquor, his right to an action on the bond would hardly be denied. The appellee, by the conditions of his bond and the terms of the statute, was required to keep a quiet and orderly house. A quiet house is defined to be one in which "no music, loud or boisterous talking, yelling or indecent or vulgar language is allowed, used, or practiced, or any other noise calculated to disturb or annoy any persons residing or doing business in the vicinity;" and for a breach of the condition to keep an orderly house suit may be maintained by any person "aggrieved thereby." So, the appellant, residing in the vicinity of the house, comes directly within a class named in the statute as an "aggrieved" person, since he would have an action at common law for damages and the abatement of the saloon as a nuisance as a disorderly house, as well as for the acts that violated the conditions of a quiet house, he would also be entitled to sue on the bond for the penalty as an "aggrieved" person. The intent of the law is further manifested by the provision giving an action also in the name of the State "in addition to civil proceedings for individual injuries."

Cutting off the bar of the saloon from the dance hall did not prevent the latter from being a part of the premises constituting Porchet's place of business. Liquor was served and drunk in the dance hall, and even if the women had been confined to the dance hall, they still had entered and were remaining in the house where the business was conducted.

The authorities of the city of Galveston had no power to grant a permit to Porchet to give balls on the premises so as to license acts prohibited by the statute and the conditions of the bond. Balls of the character that must have been conducted in the dance hall of a beer saloon could hardly be other than violative of the law, notwithstanding the license by the city and police supervision. From all the testimony

in the case these balls given by Porchet were just such as might have been expected, utterly violative of the law and subversive of the rights of the people living in the vicinity.

The testimony that the appellant rented some houses on the rear of his lot fronting the alley to objectionable characters failed to show any defense to his action on the bond. The acts of the appellant, to prevent a recovery by him, must have shown consent, or some contributory fault on his part, or that he was otherwise precluded from a recovery by the principles of the common law. Seiffer v. McLean, 7 Texas Civ. App., 158; 8 Am. and Eng. Enc. of Law, 2 ed., 698, note 4; 6 Am. and Eng. Enc. of Law, 57, note 3. No such acts of the appellant were shown.

It conclusively appears from all the evidence that the conditions of the bond were grossly violated, and that the appellant comes within one of the classes of "aggrieved persons" authorized by the statute to maintain a suit for the penalty. The only pleas in bar were a plea of not guilty and a general denial, and even if some contributory fault or other acts on the part of appellant had been pleaded sufficient to defeat his recovery, none were shown by the evidence. The law fixes the amount of recovery at $500 stipulated damages. The judgment of the court below will therefore be reversed, and judgment will be here rendered in favor of the appellant against the said Porchet and the sureties on his bond for the sum of $500, and all costs of suit.

*Reversed and rendered.*