## 15143

### PARKER v. BROWN

(10 S. E. (2d), 625)

August, 1939.

*Messrs. Wolfe & Fort* and *Carlisle, Brown & Carlisle,* for appellants,

*Messrs. Dobson & Dobson,* for respondent,

August 28, 1940.

The opinion of the Court was delivered by Mr. J. STROM THURMOND, ACTING ASSOCIATE JUSTICE.

This is an appeal from an order overruling a demurrer to a complaint. The action was commenced in the Court of Common Pleas for Cherokee County, by service of summons and complaint on the defendants on March 14, 1939.

The complaint alleges that the plaintiff, E. R. Parker, was appointed tax collector for Cherokee County on March 27, 1934, and served in this office until July 6, 1936.

That defendant, American Surety Company of New York, is a corporation organized under the laws of one of the states of the United States of America, doing business in this State, and is engaged in the business of underwriting surety bonds for county officials.

That the defendant, H. M. Brown, was appointed treasurer of Cherokee County on July 1, 1931, and qualified by executing and delivering to the State of South Carolina a surety bond in the penalty of $20,000.00 with the defendant, American Surety Company of New York, as surety thereon. The condition of said obligation being that if the said defendant Brown shall well and truly perform the duties of said office as now or hereafter required by law, during the whole period he may continue in said office, then said obligation to be void and of no effect or else to remain in full force and virtue.

That on July 22, 1933, pursuant to an Act of the General Assembly of this State increasing the amount of said treasurer's bond to $30,000.00, the said defendant Brown executed and delivered to the State another bond in the sum of $10,000.00 with the same surety thereon.

That on March 30, 1934, Alma Mills, Musgrove Mills, Hamrick Mills and Limestone Mills, all corporations owning property in said State and county, subject to taxation, composing four units of a chain of textile manufactures, commonly known as the Hamrick chain of mills, having allowed the taxes assessed and levied against them for the fiscal year 1933 to become delinquent, issued their several checks on a Gaffney bank payable to defendant Brown, as county treasurer, for the amount of taxes due by each corporation for the fiscal year 1933.

That defendant Brown issued official tax receipts as county treasurer to each of the four corporations without

having collected said checks and receiving the money therefor in payment for said taxes due by said mills for the year 1933; and failed and neglected to issue executions for the said taxes on or before the 1st day of May, 1934, as required by law so to do; and on account of said acts, it is alleged that he failed in the faithful performance of his duties as county treasurer and thereby breached the terms and conditions of his official bonds.

That as tax collector, plaintiff was entitled to receive for his services such fees and commissions as are provided by the laws of the State of South Carolina governing his office, and alleges that by reason of the breaches by defendant Brown as county treasurer of the terms and conditions of his bond, he was deprived of the fees and commissions allowed him as tax collector in the particulars named.

It is alleged that all of the property of said corporation mills were subject to levy and sale for State and county taxes due for the year 1933, and during the entire term of the plaintiff as tax collector; that each of said mills had at all times sufficient assets to pay said taxes and sufficient funds on hand in the payee bank with which to pay them; and that had the county treasurer issued his executions and delivered them to plaintiff, he could have readily and easily collected the said taxes during the term of his office, including the fees and commissions allowed him under the law.

Plaintiff claims that during the term of his office as tax collector, he was damaged by reason of the breaches of the bond of defendant Brown, as county treasurer, in the particulars set forth, in the sum of $2,576.31, all of which said sum would have been earned by him had the county treasurer lived up to and faithfully performed the requirements of his office.

The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action against them, or either of them, in that:

(a) There is no allegation of a primary or remedial right possessed by plaintiff;

(b) Nor of a corresponding primary duty owed by defendants to plaintiff;

(c) Nor of a wrong suffered by plaintiff;

(d) Nor of any remedy or relief to which plaintiff has become legally entitled.

Arguments on the demurrer were heard by his Honor, T. S. Sease, resident Judge of the Seventh Circuit, at his chambers, on August 19, 1939. Judge Sease filed an order overruling the demurrer on September 1, 1939, and the appeal is from said order.

The facts and circumstances out of which the issues in this case arise are fully set out in the opinions of this Court in two appeals involving other angles of the same situation, namely, *State ex rel. Cherokee County et al. v. H. M. Brown et al.,* 187 S. C., 223, 196 S. E., 889, and *American Surety Company v. Hamrick Mills et al.,* 191 S. C., 362, 4 S. E. (2d), 308, 124 A. L. R., 1147. Although presenting another question entirely, this case is one of the repercussions of the said case of *State ex rel. Cherokee County v. Brown et al., supra.* That case was instituted on July 20, 1935, by the State of South Carolina on the relation of Cherokee County against H. M. Brown and American Surety Company to recover additional penalties of five per cent. that had accrued against the four mills of the Hamrick group, on account of defendant Brown, as county treasurer, not depositing their checks until after May 1, 1934, and recovery was had in said action. The present case is for damages which the respondent, as tax collector, claims he has sustained by reason of the same failure on the part of County Treasurer Brown to issue executions against the said mills. In his written argument, respondent says the gist of his cause of action here is not for fees and commissions but for damages for the prevention of the collection of fees and commissions.

This case presents a novel question, and a diligent search of the authorities in this State and in other jurisdictions fails to reveal a case similar to the one here.

Appellants appealed to this Court upon twelve exceptions, but the respondent states in his brief that, in an effort to simplify the issues involved, all of the discussion might be centered around the two following issues:

(1) Did H. M. Brown, as treasurer of Cherokee County, owe any legal duty to E. R. Parker, as tax collector for Cherokee County, in the issuance of tax executions for delinquent taxes under the provisions of law applicable thereto?

(2) If so, did E. R. Parker, as tax collector, suffer any damages as the proximate cause of the failure of the treasurer to obey the law in reference to the issuance of tax executions for delinquent taxes?

We shall now proceed with consideration of the first issue, and it will be unnecessary to consider the second issue in view of the conclusion reached in the first issue. For the sake of brevity, we shall hereafter refer to the respondent as "Tax Collector", to appellant Brown as "Treasurer", and to appellant American Surety Company of New York as "Surety."

The tax collector claims he is entitled to recover of the treasurer and his surety in this action under certain statutory laws of our State. It is well settled that a plaintiff claiming a benefit under a statute must bring himself clearly within its intention to benefit.

Mr. Chief Justice McIver, in a concurring opinion, in *Walker v. Chester County,* 40 S. C., 342, 18 S. E., 936, 937, in speaking of an action brought under the statute, made this statement: "The right   *   *   *   being based entirely upon a special statute,   *   *   *   the conditions upon which such right is conferred must appear in the complaint, for otherwise no right of action is stated."

*Lowden v. Moses,* 12 S. C. L., 120, 1 McCord, 120, holds: "When a new remedy or a new cause of action is given by a statute, the plaintiff who would avail himself of either must bring himself within the statute."

*Denton v. Missouri, etc., R. Co.,* 90 Kan., 51, 133 P., 558, 559, 47 L. R. A. (N. S.), 820, Ann Cas., 1915-B, 639, holds: "The rule referred to results from a special application of the broader principle that the object of the statute must be looked to in order to determine who may invoke its benefit. The test whether an individual * * * may recover damages from the wrongdoer is whether the Legislature intended to give such right. * * * A matter necessarily to be considered in applying that test is whether the lawmakers had similar injuries in mind and designed to prevent them."

In order for a plaintiff to maintain an action under a statute, he must show that the statutory duty was imposed for his benefit, or was one which the defendant owed to him for his security. *Rosse v. St. Paul, etc., Ry. Co.,* 68 Minn., 216, 71 N. W., 20, 37 L. R. A., 591, 64 Am. St. Rep., 472.

"The right of action being purely statutory, the proof should fulfill every requirement of the statute, and to do so it was necessary that the complaint itself should contain appropriate allegations to sustain that proof." *Muckenfuss et al. v. A. & C. A. L. Ry. Co. et al.,* 121 S. C., 110, 114, 113 S. E., 367, 369.

Section 3045 of the Code of Laws of South Carolina for 1932 specifies the form of bond to be given by all public officers in this State, and said bond contains the following condition: "Now, the condition of the above obligation is such that if the above bound (insert the name of the person appointed or elected) shall well and truly perform the duties of said office, as now or hereafter required by law, during the whole period he may continue in said office, then

the above obligation to be void and of none effect or else to remain in full force and virtue."

Section 3054 of our 1932 Code provides that bonds of public officers may be sued on, reads as follows: "The bond of any public officer in this State may at all times be sued on by the public, any corporation, or private person, aggrieved by any misconduct of any such public officer; for which purpose the officer or officers, for the time being, with whom such bond may be filed, or recorded upon application at his or their office, shall deliver to any person applying therefor and paying the fees for doing the same an exact and certified copy of the bond of such public officer there deposited, or recorded; which copy so certified shall be good and sufficient evidence in all suits to be instituted in any Court of this State."

The treasurer here failed to issue executions to the tax collector, as provided by law, and the tax collector alleges he was damaged thereby on account of being prevented from legally earning his fees and commissions, and claims he is an "aggrieved" party within the purview of Code, Section 3054 set out above.

Several definitions might be given for the term "aggrieved." No case has been found in this State defining the expression in connection with its use in this particular statute, but we think the term "aggrieved" in this statute means "injured in a legal sense" and a "person aggrieved" within the meaning of this statute is "one injured in a legal sense."

*Cunningham v. Porchet,* 23 Tex. Civ. App., 80, 56 S. W., 574, 575, holds: "There has been some tendency to define the word 'aggrieved' in its common acceptation instead of its legal sense. * * * 'Aggrieved,' in its legal sense, means 'having suffered loss or injury; damnified; injured.' Black, Law Dict. in verbo 'aggrieved.' Its legal sense is the one in which it is used in the statute."

In 3 C. J. S., 350, the term is defined as follows: "Aggrieved. Having suffered loss or injury; damnified; injured. An aggrieved party or person is one who is injured in a legal sense; one who has suffered an injury to person or property."

The tax collector takes the position that when the treasurer was appointed and assumed the duties of his office and he and his surety executed and delivered his official bonds, they knew, or were charged under the law with the knowledge, that Section 2830 of our 1932 Code of Laws required the treasurer to issue executions on March 15th of each year, the language of said section being as follows: "If the said taxes, penalties and assessments are not paid on or before the fifteenth day of March next thereafter, the said county treasurer shall issue his tax execution for the said taxes, assessments and penalties against the property of the defaulting taxpayer, according to law."

However, the above section was superseded as to taxes due for the year 1933, by a Joint Resolution of the General Assembly of South Carolina, approved March 31, 1934, 38 St. at Large, 2253, which reads as follows: "The time for the payment of property taxes assessed for the year 1933 is hereby extended to May 1, 1934, at which time all such taxes remaining unpaid, together with all penalties accrued thereon as now provided by law, shall go into execution."

It is true that the bonds signed by the treasurer and his surety were executed in the light of all legislative enactments affecting the office of county treasurer, including the duties imposed upon him by the law creating the office of tax collector. They became a part of the contract and must be read into it. *Thompson v. Bass*, 167 S. C., 345, 166 S. E., 346.

The office of tax collector for Cherokee County was created by an Act of the General Assembly in 1930, and is designated as Section 2868 of the 1932 Code of Laws of this State. A portion of said section reads: "Within sixty

days after the expiration of the time allowed by law for the payment of taxes of any year in the county of Cherokee, the county treasurer of said county shall issue in the name of the State a warrant or execution in duplicate against such defaulting taxpayer in his county, signed by him in his official capacity, directed to the tax collector provided for in sub-section one of this section; and requiring and commanding him to levy the same by distress and sale of so much of the defaulting taxpayer's estate, real or personal, or both, as may be sufficient to satisfy the taxes," etc.

Since the Legislature of 1934 extended the time for payment of 1933 property taxes from March 15, 1934, to May 1 of that year, then under the above portion of Code, Section 2868, allowing the treasurer sixty days within which to issue executions for uncollected taxes, this extended the time for issuing said executions until July 1, 1934. The complaint in this action sets out that the treasurer "failed and neglected to issue executions for the said taxes on or before the 1st day of May, 1934, as required by law so to do * * *," when, in reality, under the Joint Resolution aforesaid extending time for payment of taxes and the portion of Section 2868 cited above, the treasurer had until July 1 to issue executions. The treasurer and his surety did not raise this point in their demurrer, but the decision is the same; and it is probably better they did not as the entire matter is now certain of adjudication in this action.

*Morris v. Maryland Casualty Co.,* 187 S. C., 150, 154, 197 S. E., 505, 506, sets out the elements of a cause of action as follows: "1. A primary right possessed by plaintiff. 2. A corresponding primary duty devolving upon the defendant. 3. A delict or wrong done by the defendant's principal on a joint and several bond, which constitutes a breach of such primary right and duty. 4. A remedial right in favor of plaintiff. 5. A remedial duty resting upon defendant, springing from this delict. 6. The remedy or relief itself."

A "primary right" is one the violation of which will constitute a ground for judicial redress. 33 Words and Phrases, Permanent Edition, 572. In its use in, jurisprudence the words "primary rights" are the correlative of "primary duties." They are either preventive (protective) or remedial (reparative).

The tax collector claims that the treasurer owed him the legal duty to issue tax executions for delinquent taxes so that he could collect his fees and commissions thereon, and says the treasurer injured him by causing him loss of compensation when he failed to do this. He contends that he had a primary or remedial right to have the said executions issued to him to earn compensation, and that there was a primary or remedial duty on the treasurer to so issue them to him. We do not think so. There was a primary duty on the treasurer to issue executions, but such duty was for the benefit of the public, and not for the purpose of enabling the tax collector to collect his fees and commissions. The purpose in creating the office of tax collector was to expedite and make more certain the collection of taxes It is important that taxes be collected, as revenue is essential to the operation of the State and county ·governments, and the various public institutions dependent upon them for their sustenance. The sovereign power is very jealous of its rights and tenacious of its sovereignty in the revenue department of the government, and especially in the taxing branch of this department. *Bomar v. City of Spartanburg,* 181 S. C., 453, 466, 187 S. E., 921. In shifting tax collection from the sheriff to a tax collector, Cherokee County evidently contemplated improvement in this branch of its county government, and certainly did not create the office in order to give someone a position or enable him to earn compensation, whether the same be through salary or fees and commissions. The compensation paid a tax collector, either in the form of a salary or fees and commissions, is a mere incident to the office. This being the case, there was no legal right in

the tax collector to compel the treasurer to issue him execu-
tions in order that he might earn compensation.

*School District No. 80 v. Burress,* 2 Neb. Unof., 554,
89 N. W., 609, 611, holds: "The duty of levying and col-
lecting taxes is imposed for the benefit of the public, and is
owing solely to the public. All claimants against a munici-
pality and the county, and all beneficiaries of appropriations,
have an interest, and often a very direct and special interest,
in the levying and collection of the tax. But the law which
requires these acts has in view the creation of a duty to the
public, not a duty to these individual claimants and bene-
ficiaries."

The tax collector here has failed to show the violation
of a legal right in himself, or the violation of a legal
duty owing him by the treasurer. In order to main-
tain an action, it is clear that a plaintiff must allege an in-
jury in a legal sense. A plaintiff cannot recover for loss or
damage suffered by him, whether it be to person or prop-
erty, unless he was injured in a legal sense.

In *McBride v. Atlantic, Etc., R. R. Co.,* 140 S. C., 260,
267, 138 S. E., 803, 805, this Court said: "When we speak
of a legal right, we mean a right of such nature that can
be legally enforced, and cannot be lawfully denied or in-
terfered with."

*Wilmington, Etc., R. R. Co., v. Greenville R. R. Co.,* 9
S. C., 325, 30 Am. Rep., 23, holds: "The thing complained
of * * * must prejudicially affect him in some legal
right; merely that it has done him harm is not enough."

Bliss on Code Pleading, page 149, holds: "The facts
stated must show a right, or there can be no cause of action
—that is, there can be no wrong."

Throop on Public Officers, Section 707 (page 667),
states: "It is a condition, lying at the very foundation of a
private action against a public officer, to recover damages
for a wrongful act or omission, that it must rest upon some
duty, owing to the plaintiff by the officer, which the latter

has violated, whereby the plaintiff has sustained a special damage. *And one cannot maintain an action even against a ministerial officer, for a neglect of duty, unless that duty was owing to him.*" (Italics added.)

Mechem on Public Officers, Section 598 (page 391), states: "The first question—is whether that officer owes any duty to the individual complaining. If he does not, then the individual has no right of action, even though he may have been injured—."

Public offices are created for the benefit of the commonwealth, and not to give persons employment or furnish positions to people. Incumbents have no contract or property rights in them or their unearned remuneration. The tax collector here had no property right in his office or its unearned remuneration. *State v. Rhame,* 92 S. C., 455, 461, 75 S. E., 881, Ann. Cas., 1914-B, 519.

"Public officers are created for the purposes of government. They are delegations of portions of the sovereign power for the welfare of the public. They are not the subjects of contract, but they are agencies for the state." *Attorney General ex rel. Rich v. Jochim,* 99 Mich., 358, 58 N. W., 611, 613, 23 L. R. A., 699, 41 Am. St. Rep., 614.

*Askew v. Smith,* 126 S. C., 159, 119, S. E., 378, 380, holds: "The idea of property cannot attach to the power appertaining to a political office, neither can it attach to the obligation that results from the possession of such political power. * * * The prospective salary and other emoluments of a public office are not the property of the officer, nor the property of the state; they are not property at all."

*Alexander v. McKenzie,* 2 S. C., 81, holds: "There is no contract between the government and the governed, for but one party is concerned—the public; and the individuals upon whom the powers and privileges are conferred are mere trustees, who hold and exercise such powers for the public good. * * * Then there remains only one more inci-

dent of an office to be considered in connection with the idea of a property in it, namely the right to compensation. * * * Whether such compensation can be claimed prospectively depends upon whether the employment is a contract within the constitutional definition. Chief Justice Ruggles, in *People v. Connor (Connor v. Mayor,* 5 N. Y., 285), says: ''The prospective salary and other emoluments of a public officer are not the property of the officer, nor the property of the State; they are not property at all. They are like daily wages earned, and which may be earned.' Again, he says: ''The right to the compensation grows out of the condition of the service, and not out of any contract, between the Government and the officer, that the services shall be rendered by him.' ''

A party to a contract would have a cause of action against a third person for interference with the contractual relationship, but before liability could arise certain factors and elements must appear, the first of which is the existence of a valid contract. *Chitwood v. McMillan,* 189 S. C., 262, 1 S. E. (2d), 162. Plaintiff has failed to show here any interference with contractual rights, and could not recover on this theory.

The statute law regulating the office of tax collector is found not only in Section 2868 of the Code, which provides for the tax collector of Cherokee County and sets out his duties and so forth, but also in all other Code sections respecting delinquent taxes, and Section 2855 of the Code provides that "In those counties where the duties herein referred to are performed by other officers (than sheriff) the provisions hereof shall apply to them." *Craig v. Pickens County,* 189 S. C., 164, 171, 200 S. E., 825. Section 2868 aforesaid did not create any new and additional right in the tax collector of Cherokee County which the sheriff of that county did not theretofore have. Since a sheriff has nothing to do with the collection of taxes until executions have been issued and delivered to him (*Dillon County v.*

*Lane,* 114 S. C., 494, 104 S. E., 184), likewise a tax collector has nothing to do with the collection of taxes until the executions have been issued and delivered to him.

When a sheriff or tax collector renders services in connection with tax collection, and his remuneration is dependent on fees and commissions as·in this case, his receiving of remuneration therefor is subject to several contingencies, to wit: The sale may be suspended under Section 2860 of the Code, if the taxpayer offers satisfactory evidence to the sheriff or tax collector that said taxes have been paid or improperly assessed against him; the Comptroller General, having the rights of a plaintiff in execution under Section 2861 of the Code, could withdraw the execution before levy. Const. 1895, Article 4, Section 24; *Bank of Johnston v. Prince,* 136 S. C., 439, 134 S. E., 387; the Sinking Fund Commission, under Section 2836 of the Code, for want of bidders, might be forced to buy in a taxpayer's property sold · by a sheriff or tax collector, in which event, under Section 2171 of the Code, the said officer would collect certain fees but would be entitled to no commissions; the State could sue for delinquent taxes instead of proceeding by execution, and in such case, no commissions would be earned; if a portion of a taxpayer's taxes are paid, the State could issue execution for the unpaid portion of such taxes, in which case, a sheriff or tax collector would only earn commissions on such unpaid portion collected by him, or the State could sue for the unpaid portion of taxes, in which instance no commissions would be earned. In the present case, the State sued for the unpaid portion of the taxes, and the tax collector earned no commissions, and was entitled to none. If the treasurer here had issued and delivered the executions to the tax collector, it can be easily seen from the above that the tax collector's compensation would have been subject to various contingencies, and to this extent was speculative, and there was no assurance whatever that the tax collector would have received any fees and commissions on same.

The law necessarily grants certain discretion to its officers in handling the public business. In one instance it may be wise for a public officer to pursue one course, in another instance, another course. Those charged with protecting the public interest should view that interest as supreme, should consider what is best for the public, and should be free at all times to prosecute the course that appears to be in the public interest. If one public officer should be influenced to pursue a certain course in order that another public officer might earn compensation, then the public interest might suffer. In this case, the State pursued a course that deprived the tax collector of earning compensation, but the State unquestionably had the right to handle the collection of these taxes as it did, and without recourse to the services of the tax collector. It is well settled that an individual has no right of action against a public officer for breach of a duty owing to the public only, even though such individual be specially injured thereby. Where a duty is owing to the public only, an officer is not liable to an individual who may have been incidentally injured by his failure to perform it.

Throop on Public Officers, Section 708 (page 668) states: "A private action cannot be sustained, for failure to discharge a duty owing exclusively to the public, even by a person specially injured thereby."

The case of *Strong v. Campbell,* 11 Barb., N. Y., 135, is very pertinent to the present case. In that case a statute provided for the publication of a list of uncalled for letters, and that such publication should be made in the newspaper having the largest circulation in the town. Publication of the list was not made and plaintiffs, who published the paper with the largest circulation, instituted an action, but it was held that they could not maintain the suit. The Court said: "To give a right of action for such a cause, the plaintiff must show that the defendant owed the duty to him personally. Wherever an action is brought for a breach of duty imposed

by statute, the party bringing it must show that he had an interest in the performance of the duty, and that the duty was imposed for his benefit."

*State of Missouri (Harshman) v. Winterbottom,* 123 U. S., 215, 8 S. Ct., 98, 100, 31 L. Ed., 124, holds: "While there are other reasons, perhaps, why this petition is insufficient to sustain the action, the two principal ones are— First, that the actual plaintiff, Harshman, for whose use this action was brought, shows no relation of contract or legal obligation, between Winterbottom and himself on which he has a right to bring this suit; second, that the obligation of the defendants is to the state for the collection of the state taxes, and to the county for the collection of the county taxes. * * * We do not see, therefore, that he was damaged, certainly not damaged in a manner which the law can recognize, by the collection of these taxes in warrants instead of money."

In *People v. Hoag,* 54 Colo., 542, 131 P., 400, 45 L.R.A. (N. S.), 824, the action was instituted by plaintiff on the ground that it was prevented from earning statutory compensation. A company which published a newspaper sued a county clerk and his surety alleging that the company "was entitled to have published, and that it was the duty of the county clerk to publish therein", a list of nominees to office as required by law, and claimed that it had been damaged by being deprived of publishing said list and receiving compensation therefor. Recovery was denied, and in the opinion the Court spoke these words: "The statute requiring the clerk to publish the list of nominations was clearly intended for the benefit of the public, and not for the benefit of newspapers. The benefit to the latter was only incidental. Certainly the law was not passed with the idea of benefitting publishers. So that the duty imposed was purely a public one. * * * An individual can never be suffered to sue for any injury which technically is one to the public only; he

must show a wrong which he specially suffers, and damage alone does not constitute a wrong."

*Hill v. Allen*, (Tenn.), 39 S. W., 892, 895, was a suit brought by a tax collector against the Comptroller of the State and the Pullman Company to recover commissions claimed to be due the deputy for levying a distress warrant issued by the said Comptroller against the Pullman Company for privilege tax assessed against it. The plaintiff in that case claimed that he was prevented from collecting commissions on the Pullman Company's delinquent privilege tax. The Comptroller recalled the warrant before levy was made, and after the levy the tax was paid to the Comptroller, but no commissions were included. In discussing the question whether the Comptroller could legally recall a distress warrant before levy, the Court said: "Under our statutes, no officer is allowed to demand or receive fees or other compensation for any service further than is expressly provided by law; and he is not entitled to demand and receive fees allowed by law until the duty or service for which they are granted is performed, unless otherwise expressly provided by law. * * * We find no statute providing that an officer shall be allowed commissions when he has not executed the process in his hands."

In *Boston Ins. Co. v. Chicago, etc., Ry. Co.,* 118 Iowa, 423, 92 N. W., 88, 91, 59 L. R. A., 796, the defendant, a carrier of mail under government contract, was held not liable for loss of a package of the plaintiff when a train was wrecked through defendant's negligence. In speaking of the liability of a public agent discharging public duties, the Court said: "If it owes no duty to the individual, it incurs no liability to him, even though the individual may have been injured by its action or nonaction. And the mere fact that an individual has sustained injury by reason of the act of a public officer is not enough to create a right of action in that individual."

In *State v. Harris,* 89 Ind., 363, 46 Am. Rep., 169, a county treasurer was sued by a mortgagee of real estate for failure to collect taxes assessed against the mortgagor out of the personalty, since this caused the tax lien to attach to the mortgaged real estate. In denying recovery, the Court said : "The failure of the treasurer to levy on personal property does work some injury to the mortgagee, for it adds to the burdens borne by the mortgaged land, and thus lessens the value of the security; but, while this is true, it is also true that the injury is indirect and remote. It is not enough in any case for a plaintiff, who seeks to recover for an injury caused by the negligence of another, to show simply injury and negligence; he must also show that there was a breach of duty owing to him. This general rule applies with peculiar force to persons who sue for injuries caused by official misconduct. * * * The ruling question in all cases of the kind is as to whether the plaintiff shows the breach of a particular duty owing to him. It is not sufficient to show a general public duty, or a duty to some other person directly interested."

The only case that has come to our attention that appears inconsistent with the holdings of the cases cited herein is that of *Raynsford v. Phelps,* 43 Mich., 342, 5 N. W., 403, 38 Am. Rep., 189. The facts in that case were similar to those in the case of *State v. Harris, supra,* but the Court reached a different conclusion. However, the *Harris case* has been quoted with approval in other cases, while in a number of cases the *Raynsford case* was "disapproved as not in harmony with the weight of authority and reason."

We have carefully considered the various acts relating to the machinery of property tax collection in this State, and are of the opinion that the duty imposed therein is to the public. They were enacted for the benefit and protection of the public, and the prevention of injury to the public. The tax collector in this case had no legal right to demand the executions from the treasurer,

and the treasurer owned no duty to the tax collector to issue them to him. If any injury was suffered by the tax collector, it was not an injury in the legal sense, and no recovery can be had therefor. Even though the treasurer failed to issue the executions, no right of the tax collector has been invaded, and his complaint fails to state a cause of action. Whatever damage the tax collector sustained, if any was occasioned by nothing which the law esteems an injury; and this type of damage is termed under the law *damnum absque injuria,* and for it no action can be maintained.

In their reply brief, the treasurer and his surety contend that "it was not within the province of the Tax Collector to compel the County Treasurer to issue executions by mandamus or other process." The tax collector contends in his reply brief that he could compel the county treasurer to issue executions by mandamus. *Gardner et al. v. Blackwell, Secretary of State, et al.,* 167 S. C., 313, 320, 166 S. E., 338, 340, holds: "Before a writ of mandamus should be directed by the court to any public officer, requiring such officer to perform some act, the applicant for the writ should show certain necessary things: First, a duty imposed upon the officer to perform the act; second, that the duty is one ministerial in its character; third, that the applicant has 'a legal right, for the enjoyment, protection or redress of which the discharge of such duty is necessary'; and, fourth, that the applicant has no other and sufficient remedy. 18 R. C. L. 114, par. 26."

"Mandamus is a high prerogative writ—the highest known to the law—and according to all the authorities, only issues when there is a specific legal right or a positive duty to be performed, and when there is no other appropriate remedy. When the legal right is doubtful or the performance of the duty rests in discretion or there is other adequate remedy, the writ of mandamus cannot rightfully issue." *State ex rel. Myers v. Appleby,* 25 S. C., 100, 102.

"The use of the writ of mandamus is limited to the enforcement of a merely ministerial duty, and to the protection of a plain, admitted, and unquestioned legal right that has been arbitrarily or without due warrant of law denied." *Gardner et al. v. Blackwell, Secretary of State, et al., supra.*

"It is very clear that mandamus will lie to compel the performance of some specific duty imposed by law, of a ministerial character, and in which the relator has a legal interest." *State ex rel. Harley v. Lancaster,* 46 S. C., 282, 289, 24 S. E., 198, 201.

"Writ of mandamus will issue to require an officer to perform a plain ministerial duty." *Walpole v. Wall, County Supt. of Ed.,* 153 S. C., 106, 107, 149 S. E., 760, 762.

A "ministerial duty" is one described and defined by law with such precision as to leave nothing to the exercise of judgment or discretion. It is absolute, certain and imperative, and involves the execution of a set task. 27 Words and Phrases, Permanent Edition, 264, 266.

The statute law requires a county treasurer to issue executions, and such act is purely a ministerial duty, but before one can compel the treasurer by mandamus to issue them, the applicant for mandamus must show that he has a legal right for the writ, and that he has no other and sufficient remedy. The purpose of a writ of mandamus is to enforce the performance of a legal duty. 38 Corpus Juris, 590.

The tax collector cites the case of *State ex rel. Fooshe v. Burley, Supervisor,* 80 S. C., 127, 61 S. E., 255, 16 L. R. A. (N. S.), 266, in support of his contention that he could have required the treasurer to issue the executions by mandamus. In that case, Fooshe petitioned for mandamus against Burley, county supervisor of Fairfield County, to require him to publish the statement of claims audited by the board of county commissioners of said county, as required under Section 769, Vol. 1, Code of Laws 1902 (Civ. Code). The Circuit Court granted the mandamus, and held that it was

the plain duty of the supervisor to publish such statement. The case appears to be somewhat similar to the present one. However, in that case, Fooshe applied for a mandamus when the supervisor failed to perform his ministerial duty of publishing the audited list of claims, as required by statute; in this case, the tax collector did not apply for a mandamus to require the county treasurer to issue the executions to him, as required by statute. There, the petitioner was the editor of the only newspaper in the county, and the Court held that no contingency or speculation could deprive him, as plaintiff, from the benefit of such action; here, numerous contingencies, as shown hereinabove, could have deprived the tax collector of such benefit. We think the principal reason the Court granted Fooshe the mandamus in that case was not the pecuniary benefit to be derived by Fooshe, or solely because the statute required it, but because it was to the interest of the public that it be done, pursuant to the statute requiring it. Suffice it to say, however, that if the Court granted the mandamus in that case in order that Fooshe might receive pecuniary benefit, or principally for that reason (as respondent contends), or for any other reason than that of the public interest, then we are not in accord therewith, and the decision would not be in line with the authorities in this State and elsewhere on the question. We feel, though, whether clearly expressed therein or not, that the interest of the public was the paramount motive prompting this Court in approving the mandamus issued in the *Fooshe case,* and that there is no conflict in that case and the holdings expressed in this opinion.

The tax collector could not have obtained a mandamus against the treasurer here to issue executions in order that he might collect his fees and commissions. He had a pecuniary interest in the executions held by the treasurer, but this, alone, would not be sufficient to warrant a mandamus to lie against the treasurer to issue such executions. However, it may not be amiss to say that if a

tax collector, as any other citizen, should bring a proper petition for mandamus against a county treasurer to require him to issue executions, it being shown in the petition to the satisfaction of the Court that the public interest demanded that the writ be granted, we have no hesitancy in saying that there would be merit in such petition, and the fact that the tax collector would receive fees and commissions from the executions in such case, of which he might be deprived otherwise, would not affect the action of the Court, as compensation is a mere incident to his office, the main function of which is to faithfully perform his duties in the interest of the public.

We have given much consideration to this case, and are satisfied that the complaint does not state a cause of action, and that the demurrer interposed thereto should have been sustained.

It is the judgment of this Court that the order appealed from be reversed, the demurrer sustained and the case remanded for entry of judgment accordingly.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.