20724

Odell C. KENNEDY, a minor by his duly appointed and acting Guardian *ad Litem*, J. C. Kennedy, Respondent, v. CUSTOM ICE EQUIPMENT COMPANY, INC., Appellant.

(246 S. E. (2d) 176)

*Young, Clement & Rivers,* Charleston, *for appellant.*

*Moore, Flowers & Doar,* Georgetown, *for respondent.*

July 24, 1978.

GREGORY, Justice.

Respondent Odell C. Kennedy brought this action by his guardian *ad litem* against appellant Custom Ice Equipment Company, Inc. [Custom] to recover damages he sustained when his left arm was amputated by machinery designed and installed by appellant. The jury returned a verdict for respondent. Appellant contends the trial judge erred by refusing its motion for a directed verdict and by charging a particular OSHA regulation to the jury. We affirm.

On July 15, 1976, the day of the accident, Odell Kennedy had been employed at Georgetown Ice Company [Georgetown] for three days. He was fifteen years old and this was his first job.

Georgetown is in the business of manufacturing and distributing crushed or "party" ice.

Custom designed and installed the machinery used by Georgetown to manufacture ice.

Odell was instructed to enter the cold storage room at Georgetown and empty the ice storage bins. These storage bins are fed by an overhead Archimedean screw conveyor which carries the ice from the ice making machine to the bins. The ice is removed from an opening in the underside of each bin through which the ice falls when a trap door is opened. It is common for the ice in these bins to freeze up or solidify and not fall out of the bins through the trap doors. When this freezing up of the ice, or "bridging" as the condition is called, occurs, the ice has to be physically dislodged.

To this purpose, Georgetown constructed a wooden catwalk alongside the storage bins from which its employees

could reach into the bins and break up the frozen ice with a garden hoe.

On the morning of the accident Odell mounted the catwalk for the first time and proceeded to dislodge the frozen ice with a garden hoe. He was drawn into the overhead conveyor by his left arm when the hoe made contact with the conveyor. Odell's left arm was torn off and he suffered disfiguring scars to his left shoulder.

It is undisputed that all machinery involved in the accident was designed and installed by appellant and that the wooden catwalk was constructed by respondent's employer, Georgetown.

Respondent's complaint alleges two causes of action against appellant: one for negligent design of the overhead screw conveyor and one based on strict liability in tort. By way of defense appellant sought to establish the conveyor was not negligently designed, but that if it was negligently designed respondent was contributorily negligent. Appellant further sought to establish the machinery was not defective when delivered but had been rendered defective by the construction of the catwalk by Georgetown.

Appellant's motion for a directed verdict as to each cause of action was refused by the trial judge and the case was submitted to the jury. A verdict was returned for respondent in the amount of $208,000 actual damages. This appeal followed.

On appeal from an order of the lower court denying appellant's motion for a directed verdict, this Court will review the evidence and all reasonable inferences therefrom in the light most favorable to respondent. Our task is to determine if the evidence warranted the submission of the case to the jury. *Bellamy v. General Motors Acceptance Corp.*, S. C., 239 S. E. (2d) 73 (1977).

Appellant first contends it was entitled to a directed verdict as to respondent's cause of action for negligence. Ap-

pellant alleged the overhead screw conveyor was designed and installed without protective shields because the height of the conveyor off the ground rendered it unforeseeable that anyone would come in close contact with the exposed portions of the rapidly turning auger. Appellant compared the danger to that presented by a high tension power line. Appellant further argued the dangerous nature of the conveyor was openly obvious, and that respondent was contributorily negligent by climbing up to the conveyor.

Respondent presented evidence that ice "bridging" was a common problem in the industry and that appellant was aware of the need to come in close contact with the conveyor to dislodge the bridged ice. There was also testimony that appellant had actual knowledge that it was a common practice in other ice plants to reach into the ice storage bins with a garden hoe to dislodge the frozen ice.

Since the evidence was conflicting and is subject to more than one reasonable inference the trial judge did not err by submitting this cause of action to the jury. As we stated in *Wilson v. Marshall,* 260 S. C. 271, 195 S. E. (2d) 610 (1973):

Questions of negligence, proximate cause and contributory negligence are ordinarily questions of fact for the jury, as to which the trial court's only function is to inquire whether particular conclusions are or not the only reasonable inferences to be drawn from the evidence. If the facts in controversy and the inferences deducible therefrom are doubtful, or if they tend to show both parties guilty of negligence or willfulness, and there may be a fair difference of opinion as to whose act or whose acts produced or contributed to the injury complained of as a direct and proximate cause, questions of negligence, proximate cause and contributory negligence should be submitted to the jury. See cases collected in West's South Carolina Digest, Negligence, Key Nos. 136-(25), 136(26). 195 S. E. (2d) at 611.

Appellant next contends it was entitled to a directed verdict as to respondent's second cause of action for strict liability in tort. Appellant alleged the screw conveyor was not defective when installed because of the insulation provided by height and argued Georgetown modified the conveyor when it constructed the catwalk and thereby created the defect.

Respondent admitted the catwalk was constructed by Georgetown, but offered evidence that appellant had actual knowledge of the construction and use of similar catwalks in other ice plants and should have foreseen the use of a catwalk by Georgetown. Respondent argued the failure to anticipate the foreseeable use of a catwalk by placing protective shields on the conveyor rendered the design of the conveyor defective. See e. g. Mickle v. Blackmon, 252 S. C. 202, 166 S. E. (2d) 173, appeal after remand, 255 S. C. 136, 177 S. E. (2d) 548 (1969).

The test of whether a product is defective when sold is whether the product is unreasonably dangerous to the consumer or user given the conditions and circumstances that will foreseeably attend the use of the product. Under this test, the jury could have determined that the construction of the catwalk by Georgetown was a foreseeable circumstance that required the incorporation of protective shields in the design of the conveyor. Mickle v. Blackmon, supra.

The evidence created a factual question of whether respondent's injuries were proximately caused by a defect in the product as designed or by a defect created by an unforeseeable modification by a third party. See 41 A. L. R. (3d) 1251.

In Young v. Tide Craft, Inc., S. C., 242 S. E. (2d) 671 (1978) we held the question of proximate cause was improperly submitted to the jury where the only reasonable inference to be drawn from the evidence was that the product was not defective as designed. Since the evidence

here is susceptible of the inference that the product was defective as designed the trial judge did not err by submitting the question of proximate cause to the jury. *Wilson v. Marshall, supra; Player v. Thompson,* 259 S. C. 600, 193 S. E. (2d) 531 (1972). See also: 72 C. J. S. Supplement *Products Liability* § 84b (1975).

Appellant's next argument is based on its third exception which reads as follows:

His Honor erred in charging the South Carolina Occupational Safety and Health Standard as it was not applicable in this case. His Honor erred in refusing to charge the entire Act and particularly the section stating that the Act applied to employers as requested by the defendant.

Rule 4 Section 6 of our Rules of Practice requires that "each exception must contain a concise statement of one proposition of law or fact which this Court is asked to review." An exception containing more than one proposition of law or assignment of error violates this rule. *Shea v. Glens Falls Indemnity Co.,* 228 S. C. 173, 89 S. E. (2d) 221 (1955). It is readily apparent that appellant's third exception contains two assignments of error and, as such, the exception will not be reviewed by this Court.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.