525 S.E.2d 542

**Steven ARTHURS, as Personal Representative of the Estate of Deborah Munn, Appellant,**

**v.**

**AIKEN COUNTY, South Carolina Sheriff's Department, Respondent.**

No. 3084.

Court of Appeals of South Carolina.

Heard Nov. 2, 1999.

Decided Dec. 6, 1999.

Rehearing Denied Jan. 29, 2000.

254

Robert T. Williams, Sr., and Jonathan R. Hendrix, both of Williams, Hendrix, Steigner & Brink, of Lexington, for appellant.

Vinton D. Lide and Paul H. Derrick, both of Lide, Montgomery & Potts, of Columbia, for respondent.

ANDERSON, Judge:

Steven Arthurs, as Personal Representative of the Estate of Deborah Munn (Arthurs), filed this action against the Aiken County Sheriff's Department (the Department) alleging negligence and/or gross negligence by the Department resulting in Deborah Munn's death. The trial court directed a verdict in favor of the Department. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On September 30, 1994, Deborah Munn (Victim) was shot to death in her home by her estranged husband, John Munn (Husband). Earlier that day, Victim called 911 and complained that her husband had tried to run her off of the road on her way home from work that morning. Later that evening, Victim asked her nephew, Steven Greg Arthurs (Nephew), who is the son of the Personal Representative, to fix her broken water line. While Nephew and a friend were on Victim's property attempting to fix the water line, they encountered Husband, who asked Nephew if he and his friend were "the gang that's supposed to jump on him." According to Nephew, Husband said "if you want to hit me go ahead and hit me." Husband then "reached back behind his back to where [a] gun was in his back pocket and he slung a beer" in Nephew's face. Nephew returned home and told his mother what had occurred. She called 911 and reported the incident. Victim, who had witnessed the incident, also called 911.

Deputy Charles Cain and Investigator Stacy Coleman from the Aiken County Sheriff's Department responded to the call. Deputy Cain interviewed the Nephew and Victim, who told Deputy Cain she "was in fear of" her husband. Victim told Deputy Cain that right before the officers arrived on the scene her husband had been "raising hell in the front yard." A BOLO ("be on the lookout") alert was issued for Husband's truck. Deputy Cain suggested to Victim that if her husband came back she should "stay behind a locked door and dial 911." He further stated: " 'Just call us and we'll come down here with all of us, we'll take care of him down [here] in the front yard.... [L]et us take care of a gun problem. You stay inside but whatever you do, don't unlock the door for

him.'" Investigator Coleman looked for Husband but could not locate him.

After the deputies left, Nephew saw Husband at a garage located approximately three hundred yards from Victim's residence. When Husband saw Nephew, he said: "[S]tart something with me now.... [G]o get your Mama and Daddy and I'll send both of them to hell." Nephew's mother again called 911. Deputies from the Department arrived and searched for Husband with flashlights but could not find him. The Deputies departed the scene.

Approximately one hour later, Husband forced a neighbor at gunpoint to knock on Victim's door while Husband hid behind the neighbor. When Victim answered the door, Husband forced his way into the trailer and shot Victim in the head. Victim was pronounced dead at the scene.

### ISSUES

I. Did the trial court err in granting a directed verdict in favor of the Department on the ground the Department did not owe Victim a special duty?

II. Did the trial judge err in granting a directed verdict to the Department on the ground that the Department owed no duty to Arthurs under the South Carolina Tort Claims Act?

### STANDARD OF REVIEW

In ruling on a motion for directed verdict, the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Futch v. McAllister Towing*, 335 S.C. 598, 518 S.E.2d 591 (1999); *Collins v. Bisson Moving & Storage, Inc.*, 332 S.C. 290, 504 S.E.2d 347 (Ct.App.1998). *See also Weir v. Citicorp Nat'l Servs., Inc.*, 312 S.C. 511, 435 S.E.2d 864 (1993) (Illustrating an appellate court must apply the same standard when reviewing the trial judge's decision on such motions). When the evidence yields only one inference, a directed verdict in favor of the moving party is proper. *Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 514 S.E.2d 126 (1999). If more than one reasonable inference can be drawn from the evidence, the case

must be submitted to the jury. *Mullinax v. J.M. Brown Amusement Co.,* 333 S.C. 89, 508 S.E.2d 848 (1998). In ruling on a directed verdict motion, the trial court is concerned only with the existence or non-existence of evidence. *Jones v. General Elec. Co.,* 331 S.C. 351, 503 S.E.2d 173 (Ct.App.1998).

The trial court can only be reversed by this Court when there is no evidence to support the ruling below. *Swinton Creek Nursery, supra.* When reviewing the grant of a directed verdict, the appellate court should not ignore facts unfavorable to the opposing party. *Collins, supra.* Rather, it must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in his favor. *Jones, supra. See also First State Sav. & Loan v. Phelps,* 299 S.C. 441, 385 S.E.2d 821 (1989) (in reviewing the granting of a motion for directed verdict, we should determine the elements of the action alleged and whether any evidence existed on each element).

## *LAW/ANALYSIS*

### I. PUBLIC DUTY RULE

Arthurs argues the trial court erred in finding no special duty exception to the public duty rule existed in the instant case. Arthurs claims the Department owed a special duty to Victim. We disagree.

The public duty rule was originally adopted by the South Carolina Supreme Court in *Parker v. Brown,* 195 S.C. 35, 10 S.E.2d 625 (1940):

The law necessarily grants certain discretion to its officers in handling the public business. In one instance it may be wise for a public officer to pursue one course, in another instance, another course. Those charged with protecting the public interest should view that interest as supreme, should consider what is best for the public, and should be free at all times to prosecute the course that appears to be in the public interest.... It is well settled that an individual has no right of action against a public officer for breach of a duty owing to the public only, even though such individual be specially injured thereby. Where a duty is owing to the

public only, an officer is not liable to an individual who may have been incidentally injured by his failure to perform it.

Throop on Public Officers, Section 708 (page 668), states: "A private action cannot be sustained, for failure to discharge a duty owing exclusively to the public, even by a person specially injured thereby."

*Parker*, 195 S.C. at 52, 10 S.E.2d at 632. Under South Carolina's public duty doctrine, public officials are not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than to anyone individually. *Tanner v. Florence Co. Treasurer, et al.*, 336 S.C. 552, 521 S.E.2d 153 (1999); *Jensen v. Anderson County Dep't of Soc. Servs.*, 304 S.C. 195, 403 S.E.2d 615 (1991).

▇▇▇ The public duty rule is not a separate legal doctrine. *Rayfield v. South Carolina Dep't of Corrections*, 297 S.C. 95, 374 S.E.2d 910 (Ct.App.1988). It is a special application of the broader principle that an action for negligence based upon an alleged violation of a statute cannot be maintained if the statute was enacted for a purpose other than preventing the injury of which complaint is made. *Id.* The rule applies to the special case of statutes which create or define the duties of a public office. *Id.*

▇▇▇ An essential element in a negligence cause of action is the existence of a legal duty of care owed by the defendant to the plaintiff. *Wyatt v. Fowler*, 326 S.C. 97, 484 S.E.2d 590 (1997). Without such a duty, there can be no actionable negligence. *Rogers v. South Carolina Dep't of Parole and Community Corrections*, 320 S.C. 253, 464 S.E.2d 330 (1995). To prevail in a negligence action, a plaintiff must demonstrate: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach. *Tanner, supra.* The court must determine, as a matter of law, whether the law recognizes a particular duty. *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation*, 336 S.C. 373, 520 S.E.2d 142 (1999). *See also Rogers v. Atlantic Coast Line R.R.*, 222 S.C. 66, 71 S.E.2d 585 (1952) (whether defendant is under legal duty to plaintiff is question of law for court); *Araujo v. Southern Bell Tel. and Tel. Co.*, 291 S.C. 54, 351 S.E.2d 908 (Ct.App.1986) (question of whether defendant owes

duty, the breach of which may constitute negligence, is a question of law, not of fact). If there is no duty, then the defendant in a negligence action is entitled to a directed verdict. *Steinke, supra.*

## A. Public Duty Rule as Juxtaposed to Tort Claims Act

██ The public duty rule is often invoked as if it were a rule of immunity for public officers. *Rayfield v. South Carolina Dep't of Corrections,* 297 S.C. 95, 374 S.E.2d 910 (Ct. App.1988). It is not, however, a species of immunity. *Id.*

Appellate courts in this state have recognized the difference between the public duty rule and immunity under the Tort Claims Act. *See Tanner v. Florence County Treasurer, et al.,* 336 S.C. 552, 521 S.E.2d 153 (1999); *Wells v. City of Lynchburg,* 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998); *Rayfield, supra.* In *Wells,* this Court explicated:

> The public duty rule is distinguishable from immunity. Immunity is an affirmative defense which must be pleaded and can be waived. One who pleads immunity conditionally admits the plaintiff's case, but asserts immunity as a bar to liability. In contrast, the public duty rule is a negative defense which denies an element of the plaintiff's cause of action—the existence of a duty of care to the individual plaintiff. The burden is on the plaintiff to show a duty of care was owed to him. *Rayfield v. South Carolina Dep't of Corrections,* 297 S.C. 95, 105–06, 374 S.E.2d 910, 916 (Ct. App.1988), *cert. denied,* 298 S.C. 204, 379 S.E.2d 133 (1989). In the context of a negligence action, the public duty rule may be stated as follows: a statute prescribing the duties of a public office does not, without more, impose on the person holding that office a duty of care towards individual members of the public in the performance of those duties. *Id.* at 105, 374 S.E.2d at 915–16.

*Wells,* 331 S.C. at 307, 501 S.E.2d at 752.

## B. Special Duty Exception to Public Duty Rule

██ A police officer, acting in his or her official capacity, owes a duty to the public at large rather than to any particular individual. *Wyatt v. Fowler,* 326 S.C. 97, 484 S.E.2d 590 (1997).

Here, Arthurs had the burden of showing a special duty of care was owed to Victim. *See Rayfield, supra.*

Ordinarily, there is no common law duty to act. *Wells, supra.* However, an affirmative legal duty may be created by statute, contract relationship, status, property interest, or some other special circumstance. *Jensen v. Anderson County Dep't of Soc. Servs.,* 304 S.C. 195, 403 S.E.2d 615 (1991); *Wells, supra.* Many statutes impose a duty on public officials to perform certain acts. *Wells, supra.* Normally, such officials enjoy an immunity from a private cause of action under the public duty rule. *Id.* This rule holds that public officials are not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than anyone individually. *Id.* Thus, where the duty is owed to the public in general, the official is not liable to an individual who may have been incidentally injured by the failure to perform the duty. *Id.* An exception to the general rule of non-liability exists when a duty is owed to specific individuals rather than the public only. *Id.*

### 1. Creation of Special Duty by Statute

The public duty rule presumes statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public. *Tanner, supra; Wells, supra.* Generally, such statutes create no duty of care towards individual members of the public. *Wells, supra.* An exception is recognized where the plaintiff can establish the defendant owed a special duty of care to the plaintiff. *Bellamy v. Brown,* 305 S.C. 291, 408 S.E.2d 219 (1991); *Wells, supra.*

To determine if a public officer is under a special duty to the plaintiff, the court looks to the statute and the facts of the particular case. In *Rayfield v. South Carolina Dep't of Corrections,* 297 S.C. 95, 374 S.E.2d 910 (Ct.App.1988), this Court articulated a six-part test for determining whether a statute creates a special duty to an individual member of the public:

(1) an essential purpose of the statute is to protect against a particular kind of harm;

(2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;

(3) the class of persons the statute intends to protect is identifiable before the fact;

(4) the plaintiff is a person within the protected class;

(5) the public officer knows or has reason to know of the likelihood of harm to members of the class if he fails to do his duty; and

(6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

*Rayfield,* 297 S.C. at 106, 374 S.E.2d at 916. *See also Jensen v. Anderson County Dep't of Soc. Servs.,* 304 S.C. 195, 403 S.E.2d 615 (1991) (wherein the Supreme Court adopted the *Rayfield* six step special duty analysis as an exception to the public duty rule).

 A plaintiff may prevail against a public duty defense if the statute not only concerns the duties of a public office, but also has the essential purpose of protecting identifiable individuals from a particular kind of harm. *See Rayfield, supra.* In such cases, the statute creates a special duty which may give rise to a negligence suit against an officer for failure to perform his duties properly. *Id.*

 Arthurs urges this Court to find S.C.Code Ann. §§ 16–25–10 to 16–25–80 (Supp.1994), the Criminal Domestic Violence Act, created a special duty on the part of the Aiken County Sheriff's Department to protect Victim. Additionally, Arthurs relies upon S.C.Code Ann. § 23–13–70 (1989), which provides:

The deputy sheriffs shall patrol the entire county at least twice a week.... They shall .... as often as practicable ride by houses that are off the public highways and in lonely parts of the county, especially such as are without male protectors, and shall use every means to prevent or detect, arrest and prosecute for ... carrying weapons contrary to law ... and for the violation of every law which is detrimental to the peace, good order and morals of the community.

Section 23–13–70 merely recites, in broad terms, the general duty of a deputy sheriff to patrol the county. It neither identifies any particular class of victims nor any particular harm. The requirements of the *Rayfield* test are not satisfied. Arthurs did not establish this statute created a special duty to Victim.

■ The trial court ruled the Criminal Domestic Violence Act did not create a special duty in favor of Victim. South Carolina Code Ann. § 16–25–20 (Supp.1994). of the Criminal Domestic Violence Act provides:

It is unlawful to: (1) cause physical harm or injury to a person's own household member, (2) offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril.

The essential purpose of the statute is to protect against harm and violence from members of an individual's household. The class of persons intended to be protected by the statute is identifiable before the fact. Victim was certainly a member of the protected class. However, when deputies responded to the call in which Nephew was the victim, they did not know or have reason to know the likelihood of harm to Victim. She had not taken out a warrant on Husband and did not have an order of protection. These factors militate against a finding that the statute creates a special duty in this case.

■ Arthurs alleges element six of the *Rayfield* test was satisfied because the Department had "undertaken to act in the exercise of its office by undertaking the protection of [Victim] and in attempting to enlist her aid in the capture" of her husband, thereby creating a special relationship between the Department and Victim. We do not find the deputy's common-sense advice to Victim to call the police if she saw her estranged husband and to avoid letting him in the house created a special duty. Moreover, Deputy Cain testified that, although he wanted Victim "to set [Husband] up so he was in the front yard when" the police showed up, he did not convey that thought to Victim. He merely related to Victim the fact that the police would handle the problem. Deputy Cain said he did not involve Victim in "a law enforcement operation in

any way, shape or form." Further, the mere act of calling 911 does not create a special duty.

Pursuant to S.C.Code Ann. § 16–25–70 (Supp.1994),[1] "[a] law enforcement officer *may* arrest, with or without a warrant, a person at his place of residence or elsewhere if the officer has probable cause to believe that the person is committing or has freshly committed any misdemeanor or felony under the provisions of [the Criminal Domestic Violence Act] even if the act did not take place in the presence of the officer." (Emphasis added). As used in this statute, the word "may" is precatory rather than mandatory. The use of the word "may" clearly imposes no affirmative duty on law enforcement. It simply gives officers flexibility and discretion to arrest a person who violates the provisions of the Criminal Domestic Violence Act.

In *Tanner v. Florence Co. Treasurer, et al.*, 336 S.C. 552, 521 S.E.2d 153 (1999), the statute at issue provided the County "*shall* mail a notice of delinquent property taxes" prior to a delinquency sale of that property. S.C.Code Ann. § 12–51–40 (Supp.1998) (emphasis added). The Court found that in certain circumstances § 12–51–40 creates a special duty. The language from that section is distinguishable from the verbiage of § 16–25–70, which provides the circumstances under which an officer *may* arrest.

Our Supreme Court and this Court have been "reluctant to find special duties statutorily imposed." *Tanner*, 336 S.C. at 562, 521 S.E.2d at 158. *See, e.g., Brady Dev. Co. v. Town of Hilton Head Island*, 312 S.C. 73, 439 S.E.2d 266 (1993) (holding city owed lot purchaser no special duty of care in issuing development permit under municipal development standards ordinance, and thus could not be held liable to purchaser for alleged negligence in issuing permit to developer); *Bellamy v. Brown*, 305 S.C. 291, 408 S.E.2d 219 (1991) (finding statutorily prescribed exceptions to the disclosure requirements of the state's Freedom of Information Act did not establish a duty to maintain confidentiality); *Wells v. City of Lynchburg*, 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998) (ruling plaintiff could not sue city for failing to maintain fire

---

1. An amendment, which became effective on June 7, 1995, substantially revised this section.

hydrants because it was barred by a provision of the Tort Claims Act and city owed duty only to public generally); *Summers v. Harrison Constr.*, 298 S.C. 451, 381 S.E.2d 493 (Ct.App.1989) (concluding state statute requiring officers who issue building permits to secure evidence that the builders and renovators of residences are licensed did not create a special, actionable duty to protect homeowners); *Rayfield v. South Carolina Dep't of Corrections*, 297 S.C. 95, 374 S.E.2d 910 (Ct.App.1988) (finding state statute requiring prison and parole officials to keep records of prisoners' habits and deportment and to prepare adequate reports concerning parole candidates did not create a special duty to protect particular members of the public against crimes committed by released prisoners).

We hold neither the Criminal Domestic Violence Act nor § 23–13–70 creates a special duty to Victim. Therefore, the trial court did not err in granting a directed verdict as to this issue in favor of the Department.

## 2. Creation of Special Duty by "Special Circumstance"

 Arthurs claims a special duty existed based on a "special circumstance." He maintains the "special circumstance" arose when the Department, specifically Deputy Cain, attempted to make Victim a part of the plan to capture Husband by using her as "bait."

According to Deputy Cain, he did *not* convey to Victim that he wanted to use her as "bait" in an attempt to capture her husband. In fact, he explicitly told Victim to "stay behind a locked door and dial 911" if her husband came back and started bothering her.

Because South Carolina courts have not addressed the creation of a special duty by "special circumstance" in a law enforcement context, we look to other jurisdictions for guidance. In *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), the Supreme Court of North Carolina was faced with a situation similar to the case at bar. The administrator of the estate of a woman who was fatally shot by her estranged husband brought suit against the sheriff for the alleged negligent failure to provide police protection.

Upon moving out of the home she shared with her husband, the victim met with the sheriff and related her fears that her husband would kill her if she remained in the home. The husband's behavior had become irregular and he had threatened her. The victim found a letter her husband had written to their son indicating he intended to kill her and then commit suicide. She called the sheriff and informed him of the "gist" of the letter. The sheriff dispatched two deputies to check on the husband. Both reported he appeared neither homicidal nor suicidal. The victim spent several nights with three of her friends. The sheriff told one of the friends he "believed it would be a good idea for [the victim] to stay with her, that he would keep [the victim's] whereabouts confidential, and that [the friend] should call if she needed him." *Id.* at 900. According to another friend, the victim told her that after she showed the letter she found to the sheriff he told her that her husband would not harm her. A third friend declared the sheriff told the victim that " 'he would see she got back and forth to work safely ... [and] that his men would be keeping an eye on her.' " *Id.* Five days after moving out of their house, the victim was murdered by her husband.

The sheriff argued the Court of Appeals erroneously reversed the trial court's order of directed verdict in his favor as to the plaintiff's claim the sheriff negligently failed to protect the victim. The Supreme Court of North Carolina elucidated:

There are two generally recognized exceptions to the public duty doctrine: (1) where there is a special relationship between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) "when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered." . . . .

Plaintiff in the instant case relies upon the "special duty" exception as a basis for liability. To make out such a prima facie case, *plaintiff must show that an actual promise was made by the police to create a special duty, that this promise was reasonably relied upon by plaintiff, and that this reliance was causally related to the injury ultimately suffered by plaintiff.*

*Braswell,* 410 S.E.2d at 902 (citations omitted) (emphasis added).

Applying the *Braswell* "special circumstance" test to the case *sub judice,* we rule no special duty was created. In the absence of a duty owed by the Department to Victim, an essential element of the negligence action is missing. Thus, the trial court did not err in directing a verdict as to the absence of a special duty.

## II. TORT CLAIMS ACT

 Arthurs contends the trial judge erred in granting a directed verdict to the Department on the ground that the Department owed no duty to Arthurs under the South Carolina Tort Claims Act. We disagree.

 The Tort Claims Act, S.C.Code Ann. §§ 15–78–10 to 200 (Supp.1998), is a limited waiver of governmental immunity. *See Moore v. Florence Sch. Dist. No. 1,* 314 S.C. 335, 444 S.E.2d 498 (1994). Exceptions to the waiver of sovereign immunity under the Tort Claims Act must be construed liberally in favor of limiting the liability of the state and its political subdivisions. S.C.Code Ann. § 15–78–20(f) (Supp. 1998); *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 520 S.E.2d 142 (1999). The burden of establishing a limitation upon liability or an exception to the waiver of immunity under the Tort Claims Act is upon the governmental entity asserting it as an affirmative defense. *Steinke, supra.* The Tort Claims Act does not create a new substantive cause of action against a governmental entity. *Moore, supra.* Prefatorily, Arthurs must present evidence of a *duty to act* in order to recover under the Tort Claims Act. Having found the Department owed no duty to the victim in this case separate and apart from that owed to the public at large, we rule there can *not* be a recovery under the Tort Claims Act.

Importantly, neither the Tort Claims Act nor case law has changed the *Wyatt v. Fowler* rule that police officers do not owe a duty to individuals but to the public at large. Arthurs had the burden of showing a duty owed to Victim. His failure to show the existence of a duty is fatal to recovery under the

Tort Claims Act. Thus, the trial court properly directed a verdict in favor of the Department as to the Tort Claims Act.

## CONCLUSION

 Under *Parker, Wells,* and *Tanner,* we conclude the public duty rule bars recovery in this case. Arthurs failed to show a special duty exception was created by either statute or "special circumstance." We hold that in South Carolina in order to create a special duty by "special circumstance" in a law enforcement context, the plaintiff must show:

(1) an actual promise was made by law enforcement to create a special duty;

(2) the promise was reasonably relied upon by the plaintiff; *and*

(3) the plaintiff's reliance was causally related to the injury ultimately suffered.

The absence of a duty to act on the part of the Department negates any recovery by Arthurs.

**AFFIRMED.**

CONNOR and STILWELL, JJ., concur.